CcUNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. |
| | )    10-40242-FDS |
| PATRICK A. PATTON, and | ) |
| LANDMARK PUB, INC., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT

SAYLOR, J.

        This case involves allegations of cable television signal piracy.  Plaintiff Joe Hand

Promotions, Inc., a programming distributor, has filed a civil action against Patrick A. Patton and

Landmark Pub, Inc.  The complaint alleges that the defendants obtained access to programming

for an Ultimate Fighting Championship telecast in the exclusive control of Joe Hand Promotions

and displayed the program on a large-screen television at a bar they own and manage.  Both

defendants have defaulted; the issue is ascertaining the amount of damages to be assessed.

        The Court must first determine whether Joe Hand Promotions is entitled to recover under

both 47 U.S.C. § 553, which applies to the theft of "cable" transmissions, and 47 U.S.C. § 605,

which applies to the theft of "radio" transmissions.  The latter statute provides for greater

potential recovery of damages and recovery of costs and attorney's fees as of right.  The Court

must then consider the amount of compensatory damages (either statutory or actual) to be

awarded and the extent to which enhanced damages, attorney's fees, costs, and injunctive relief

should be awarded.

For the reasons set forth below, the Court concludes that § 553 applies to this case, but that § 605 does not; that cable piracy by a commercial institution is an unfair business practice under Mass. Gen. Laws ch. 93A; and that, in the context of cable piracy, claims of common-law conversion are preempted by the Federal Communications Act and the Copyright Act.  The Court also finds that plaintiff is entitled to an award of costs and reasonable attorney's fees.

## I.   **Factual Background**

The following facts are taken as true.[1]

Joe Hand Promotions is a programming distributor that was granted exclusive nationwide commercial distribution rights to the "Ultimate Fighting Championship 79: Nemesis" telecast ("the Program").  (Compl. ¶ 12).  The signals were transmitted by closed circuits.  (*Id.* ¶ 12).  Joe Hand Promotions entered into sublicensing agreements with various commercial entities granting them commercial exhibition rights.  (*Id.* ¶ 13; Plaint. Aff. ¶ 3).  The sublicensing fee for the program in this case was $750.  (Plaint. Aff. ¶ 8).

On December 29, 2007, defendants illegally displayed the Program at Emerald Isle Pub, a bar owned and managed by defendants in Worcester, Massachusetts.  (Compl. ¶ 15).  According to plaintiff, these signal interceptions were done "willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."  (*Id.* ¶ 16).  Joe Hand Promotions has suggested multiple ways that defendants could have gained unauthorized access

---

[1]  Because defendants have defaulted for failure to plead or otherwise defend, they are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which the damages will be calculated."  *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002), *quoting Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999).  Before entering a default judgment, the Court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency.  *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002); *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992).

to the programming.  (Plaint. Aff. ¶ 9).

Emerald Isle Pub did not charge a cover to enter the restaurant.  (MacDonnold Aff. at 1). The Program was displayed on one television with a 36" screen.  (*Id.*).  The number of patrons in the establishment varied from thirteen to fifteen.  (*Id.*).  However, the restaurant had the capacity to hold approximately 50 people.  (*Id.*).

Joe Hand Promotions asserted four counts in their complaint:  (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of Mass. Gen. Laws ch. 93A § 11.

## II.    Procedural History

This case was filed on December 3, 2010.  Defendants failed to appear or otherwise defend.  On April 29, 2011, default was entered against defendants.  Joe Hand Promotions seeks a default judgment award in the amount of $110,000 and attorney's fees and costs.

## III.    Analysis

### A.    Applicability of Sections 553 and 605

Plaintiff contends that it is entitled to recover damages under both 47 U.S.C. § 553 and 47 U.S.C. § 605.[2]  Although §§ 553 and 605 are very similar, § 605 allows for a greater potential recovery.  Furthermore, § 605 mandates that the defendant pay costs and attorney's fees; such an award is discretionary under § 553.  The Court must therefore examine the applicability of each.

Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically

---

[2] Specifically, the motion for default judgment seeks the following relief:  statutory damages in the amount of $110,000 for violations of 47 U.S.C. § 553 and 47 U.S.C. § 605 ($10,000 for the violation with an additional $100,000 due to the willful nature of the violation); and attorney's fees and costs in the amount specified in an attached affidavit.

authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

47 U.S.C. § 553(a)(1).  There is no question that defendants' conduct subjects them to liability

under § 553.

Section 605 provides that "[n]o person not being entitled thereto shall receive or assist in

receiving any interstate or foreign communication by radio and use such communication (or any

information therein contained) for his own benefit or for the benefit of another not entitled

thereto."  47 U.S.C. § 605(a).  Section 605 thus prohibits the unauthorized interception or

reception of *radio* communications.

The First Circuit has held that § 605 does not apply to the theft of cable communications.

*Charter Commc'ns Entm't I v. Burdulis*, 460 F.3d 168, 172 (1st Cir. 2006) ("the statutory

text . . . make[s it] clear that § 605 is not to apply to signals delivered by wire over a cable

network."), *aff'g* 367 F. Supp. 2d 16 (D. Mass. 2005).  The complaint here alleges that

defendants intercepted the signal to the pay-per-view programming that plaintiff was

sublicensing.  (Compl. ¶ 15).  Thus, because defendants were intercepting cable

communications, § 605 does not apply, and plaintiff cannot recover damages under that section.

### B.      Computation of Damages Under Section 553

Section 553 states as follows:

> [d]amages awarded by any court under this section shall be computed in
> accordance with either of the following clauses: (i) the party aggrieved may
> recover the actual damages suffered by him as a result of the violation and any
> profits of the violator that are attributable to the violation which are not taken into
> account in computing actual damages . . . ; or (ii) the party aggrieved may recover
> an award of statutory damages for all violations involved in the action, in a sum
> of not less than $250 or more than $10,000 as the court considers just.

§ 553(3)(A).  Where the violations perpetrated by defendants were "committed willfully and for

purposes of commercial advantage or private financial gain, the court in its discretion may

increase the award of damages, whether actual or statutory under subparagraph (A), by an

amount of not more than $50,000." § 553(c)(3)(B).

### 1.   Amount of Compensatory Damages

Plaintiff has demonstrated that there was a violation of § 553 at Emerald Isle Pub.  The

maximum amount that a plaintiff can recover under § 553(3)(A)(ii) is $10,000 for all the

violations outlined in the complaint, not for each violation.  *Burdulis*, 460 F.3d at 178.  Here, the

violation, in the commercial context, was ordinary in scale—there were no more than fifteen

people inside the establishment during the violation and the Program was only playing on one

television.  Therefore, this Court awards plaintiff $750 in actual damages—the amount Joe Hand

Promotions would have received had defendants paid the sublicensing fee.

### 2.   Enhanced Damages

In addition to compensatory damages, plaintiff seeks enhanced damages under the statute

for a "willful" violation made "for purposes of commercial advantage or private financial gain."

The term "willful" is not defined in the statute.  In the context of alleged Cable Act violations, it

means "a disregard for the governing statute and an indifference to its requirements." *Charter*

*Commc'ns Entm't I v. Burdulis*, 367 F. Supp. 2d 16, 29 (D. Mass. 2005) (quoting *Cable/Home*

*Commc'n Corp. v. Network Prods., Inc.* 902 F.2d 829, 851 (11th Cir. 1990) (internal quotations

omitted)).  Courts generally have been imprecise in assessing willfulness, often assuming it

rather than finding it in any reasoned way.  This is most likely due to the nature of the violation:

conducting cable piracy requires affirmative illegal acts.  However, as this Court has previously

noted, there must be a distinction between intercepting a signal willfully and non-willfully, lest

the statutory language be rendered meaningless. *Burdulis*, 367 F. Supp. 2d at 30, 30 n.17.

Some courts have gone further and found that a default by a defendant is sufficient to demonstrate willfulness. *See, e.g., Joe Hand Promos., Inc. v. Salinetti*, 148 F. Supp. 2d 119, 122 (D. Mass. 2001) (citing *Time Warner Cable of N.Y.C. v. Olmo*, 977 F. Supp. 585, 589 (S.D.N.Y. 1997) (''[T]he court may draw an inference of wilfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct.'')); *see also Cablevision Sys. N.Y.C. Corp. v. Rosa*, 2002 WL 1446942, at *5 (S.D.N.Y. April 3, 2002) (concluding defendant's default, among other things, demonstrated a willful disregard for the Cable Act); *Century ML-Cable Corp. v. Diaz*, 39 F. Supp. 2d 121, 125 (D.P.R. 1999) (''[D]efendant's civil contempt and default alone may be viewed as evidence of willfulness.''); *Cablevision Sys. N.Y.C. Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (''[The] default itself could further be viewed as evidence of willfulness.''). *But see Kingvision Pay-Per-View, Ltd. v. Langthorne*, 2001 WL 1609366, at *1 (D. Mass. Nov. 28, 2001) (inferring willfulness from a defendant's default alone is ''extremely problematic'') (citing *Entm't by J & J, Inc. v. Perez,* 2000 WL 890819, at *2 (N.D. Cal. June 30, 2000) (holding that the mere assertion that a defaulted defendant acted willfully was insufficient to justify enhanced damages)); *Kingvision Pay–Per–View, Ltd. v. Arias,* 2000 WL 20973, at *2 (N.D. Cal. Jan. 7, 2000) (concluding that allegations of willfulness alone were insufficient to support finding of willfulness against defaulted defendant). This Court concludes that the mere act of default does not establish willfulness. *Burdulis*, 367 F. Supp. 2d at 30.

Plaintiff states that its signal programming cannot be intercepted innocently, and therefore  in this case it must have been done intentionally. (Plaint. Aff. ¶ 9). It then lists a

number of ways that the signal *could* have been intercepted.  (*Id.*).[3]  Plaintiff does not, however,

specifically state how the signal was *actually* intercepted.  Plaintiff's position is certainly

plausible on its face.[4]  As noted, however, that position, if accepted, would appear to lead to a

finding of willfulness in every single case.  That, in turn, would render the statutory distinction

between willful and non-willful violations entirely meaningless.  This issue arises in the setting

of a default judgment, and without a full factual record, making further analysis difficult.[5]  For

present purposes, and in the absence of any other evidence, the Court will accept the factual

representation of plaintiff that the signals could only have been intercepted deliberately, and

therefore "willfully" within the meaning of the statute.  Whether that argument will suffice in

different circumstances is a question for another day.

The second issue is whether the violation was made "for purposes of commercial

advantage or private financial gain."  Because the intercepted signal was shown at a restaurant as

---

[3] Plaintiff states that its programming signal could be intercepted by  (1) use of a "blackbox," "hotbox," or "pancake box" that descrambles the reception of a pay-per-view broadcast when installed on a cable TV line; (2) use of a "smartcard," "test card," or "programming card" that descrambles the reception of a pay-per-view broadcast when installed on a DSS satellite; (3) where a commercial establishment misrepresents itself as a residential property to allow purchase of pay-per-view programming at the residential rate; (4) use of cable splice or drop; and (5) the purchase of other illegal unencryption devices and the purchase of illegal satellite authorization codes.  (Plaint. Aff. ¶ 9).

[4] Defendants are deemed to have admitted the factual allegations in the complaint.  However, the complaint simply tracks language within § 553, alleging that "said unauthorized interception . . . by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." (Compl. ¶ 14).  Merely stating that something was done "willfully" is a legal conclusion and, therefore, is not deemed admitted for the purposes of default.  10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE § 2688, at 63 (3d ed. 1998); *see also DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[5] Normally, for an interception to be found willful, there must be some factual specificity as to how defendants intercepted the signal.  *E.g.*, *Comcast of S. New England, Inc. v. Kacavas*, 2007 WL 4556685, at *3 (D. Mass. Dec. 18, 2007) (defendant "knowing that he could not receive premium cable content, voluntarily and intentionally undertook to modify his cable box so that they would unscramble content that he was clearly blocked from receiving."); *Mountain Cable Co. v. Choquette*, 53 F. Supp. 2d 107, 111, 113 (D. Mass. 1999) (noting evidence that there was scrambling equipment in defendant's basement, the court found defendant acted willfully).

an inducement for patrons to purchase food and beverages, the Court has no difficulty finding

that the violation was made for these purposes.

Accordingly, the Court finds that the violation was "willful" and was "made for purposes

of commercial advantage or private financial gain." It therefore awards additional enhanced

damages in the amount of $750, or equal to the actual damages sustained.

### 3.    Costs

Section 553(c)(2)(C) authorizes the court in its discretion to "direct the recovery of full

costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Here,

plaintiff has requested investigative costs and the filing and service costs. An affidavit filed by

the plaintiff's attorney, Patricia Szumowski, indicates that she has advanced $389.71 for filing,

copying, and service costs. (Szumowski aff. ¶ 2). Accordingly, Joe Hand Promotions will be

awarded costs against Mr. Patton and Landmark Pub, Inc. in the amount of $389.71.

### 4.    Attorneys' Fees

Section 553(c)(2)(C) also authorizes the Court in its discretion to award reasonable

attorneys' fees to the prevailing party. "Given the burden borne by cable operators to protect

and redress their statutory rights through civil actions from what is also criminal conduct," it is

appropriate to award attorneys' fees in these cases. *Diaz*, 39 F. Supp. 2d at 126.

The First Circuit follows "the 'lodestar' approach, which calculates reasonable attorneys'

fees as 'the number of hours reasonably expended multiplied by a reasonable hourly rate.'"

*Comcast of Mass. I, Inc. v. Naranjo*, 303 F. Supp. 2d 43, 50 (D. Mass. 2005) (quoting *Furtado v.*

*Bishop*, 635 F.2d 915, 920 (1st Cir. 1980)). A reasonable hourly rate is measured according to

prevailing market rates in the relevant community and by considering factors such as "'the type

8

of work performed, who performed it, the expertise that is required, and when it was

undertaken.'" *Choquette*, 53 F. Supp. 2d at 114 (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d

945, 951 (1st Cir. 1984)).  The Court may adjust the lodestar upward or downward to reflect

other factors, including the result obtained.  *Id.* at 114-15 (citing *Grendel's Den*, 749 F.2d at

951).  "The First Circuit considers three meanings of the term 'results obtained':  plaintiff's

success on each claim, relief actually achieved, and the societal importance of the right which

has been vindicated." *Id.*

     In the present case, plaintiff seeks $1,250 in legal fees, representing five hours of time by

attorney Patricia Szumowski at a rate of $250.  This lawsuit is essentially identical to multiple

other recent lawsuits in other district courts, including California and New York.  One would

expect that the first case that was investigated, researched, and filed would bear the most

significant legal expenses, and that each succeeding case would involve substantially less effort

by the attorneys.  In addition, plaintiff requested relief under 47 U.S.C. § 605, which does not

apply to cable piracy; arguably, the attorneys' costs incurred pursuant to those allegations should

not be allowed.  In light of all of this, the Court will not award the full requested amount of five

hours.  Instead, an award for attorneys fees in the amount of $1,000, representing four hours'

work at $250, is reasonable under the circumstances and will be awarded against defendants.

### C.    Mass. Gen. Laws ch. 93A § 11

     Plaintiff seeks damages pursuant to Mass. Gen. Laws ch. 93A § 11 for unfair and

deceptive business practices.  Chapter 93A is not preempted by federal communications law.

*Quincy Cablesystems, Inc. v. Sully's Bar*, 684 F. Supp. 1138, 1142 (D. Mass. 1988).  Therefore,

a defendant can be liable under both 47 U.S.C. § 553 and ch. 93A § 11.

In *Quincy Cablesystems, Inc. v. Sully's Bar*, the court found that the interception of the video signal of a sports program by a commercial establishments qualified as an unfair business practice within the meaning of ch. 93A.  *Id.* at 1143.  Because the facts in this case are directly analogous to *Sully's Bar*, this Court finds that defendants violated ch. 93A.  Chapter 93A allows the court to double and triple damages should the violation be willful, and permits recovery of attorneys' fees and costs.  Mass. Gen. Laws ch. 93A § 11 (2006).  Any such award here, however, would simply duplicate the awards previously made, and therefore will not be separately awarded.

### D.      Conversion

Plaintiff also contends that it is entitled to damages for conversion.  The First Circuit has yet to decide whether state law claims for conversion are preempted by the Federal Communications Act ("FCA").  However, the Fifth Circuit has found that because applying common-law conversion in these cable piracy cases would result in 50 separate standards to solve a national problem, the FCA preempts such claims.  *See Prostar v. Massachi*, 239 F.3d 669, 676-77 (5th Cir. 2001).  Preemption aside, the conduct alleged by plaintiff still would not support an action for conversion.  In the context of FCA claims, the interests protected by conversion are more analogous to those protected by the Copyright Act.  *See id.* at 677 ("The unauthorized access and retransmission of cable broadcasting, which the FCA prohibits, does not actually deprive the licensee of its license.  Whereas conversion requires the wrongful deprivation of one's possession of property, the Copyright Act provides for liability when mere copying occurs, rendering it a more appropriate analogue to the FCA."); *see also Quincy Cablesystems, Inc. v. Sully's Bar*, 650, F. Supp. 838, 849-50 (D. Mass. 1986) ("The elements in

plaintiff's action for conversion involve elements that would not establish qualitatively different conduct by the defendants than the elements for an action under the Copyright Act . . . . Plaintiff's conversion action is thus preempted.").  Because the Copyright Act preempts the claim of conversion in the context of cable piracy, plaintiff is not entitled to damages for conversion.

**IV.**     **Conclusion**

For the reasons stated above, the Court awards Joe Hand Promotions the following damages against Patrick A. Patton and Landmark Pub, Inc.:

1.     Compensatory damages in the amount of $750,

2.     Damages for a "willful" violation in the amount of $750,

3.     Costs in the amount of $389.71, and

4.     Attorneys' fees in the amount of $1,000,

for a total of $2889.71.  The clerk is directed to enter judgment for plaintiff in that amount, with prejudgment interest as provided by law on the damages awards.

**So Ordered.**

                                           /s/ F. Dennis Saylor
                                          F. Dennis Saylor IV
                                          United States District Judge


Dated: November 29, 2011

11